UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AFFIDAVIT OF SPECIAL AGENT )
JOHN S. SOARES )
IN SUPPORT OF A CRIMINAL COMPLAINT )
) No. 12M-5134-JGD
)

I, John S. Soares, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

1. This affidavit is submitted in support of a Criminal Complaint charging ODALYS CASTILLO with violations of Title 18, United States Code, Sections 641 and 1956(a)(3)(B).

2. I have been employed as a HSI Special Agent since May 2009. I am currently assigned to the Boston, Massachusetts, Special Agent in Charge (SAC Boston), where I am responsible for investigating, among other things, criminal violations related to money laundering, violations of the Bank Secrecy Act, and other financial crimes. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Academy, where I received training with regard to conducting investigations involving violations of federal law. Prior to becoming a HSI Special Agent, I was employed as a

Forensic Scientist and Crime Scene Investigator with the Massachusetts State Police from October 2001 through April 2009. In that capacity, I routinely participated in criminal investigations, the execution of search and seizure warrants, and testified as an expert witness in state criminal court proceedings.

3. I have personally participated in the investigation of the named target ODALYS CASTILLO since approximately March 27, 2012. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by other Special Agents of HSI, the United States Secret Service, and other federal, state, and local law enforcement agencies. I have also reviewed information from a variety of additional sources, including, physical surveillance, video recordings, law enforcement databases, public records, and information received from the Department of Motor Vehicles, Puerto Rico.

4. During my law enforcement career, I have received specialized training regarding the criminal investigation of financial crimes, financial fraud, and money laundering through the Federal Law Enforcement Training Center, the United States Department of Justice Asset Forfeiture and Money Laundering Section, and the New England State Police Information Network. Additionally, I have gained experience in financial

2

investigations through internal and external training courses, seminars, and on-the-job experience.

5. In addition to my training, I have gained extensive experience in the investigation of financial crimes, specifically money laundering, by having observed, reviewed, and participated in federal criminal investigations, and their related materials. During my tenure with HSI, I have participated in the analysis of financial documents, the execution of federal search and seizure warrants, and arrests involving violations of federal law.

6. I am familiar with financial schemes conducted by criminal organizations and the means in which they attempt to launder their illicit proceeds of specified unlawful activities. I have conducted criminal financial investigations in order to identify proceeds and assets, which have been concealed or disguised in nature, location, source, and ownership. I am an law enforcement officer of the United States, and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 1956, and other federal offenses.

7. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the filed Criminal Complaint, I have not included each and every fact

known to me and other law enforcement officers involved in this investigation.

## INVESTIGATION BACKGROUND

8.  Special Agents with HSI and the United States Secret Service ("USSS") have identified a number of individuals involved in a fraudulent income tax refund scheme known to the affiant as Operation Mass Mail ("OMM"). The scheme, which originated in New York involves using Personally Identifiable Information, including the Social Security Numbers ("SSNs") of Puerto Rican residents to electronically file fraudulent U.S. Individual Income Tax Returns, requesting refunds. Residents of Puerto Rico are issued SSNs which begin with the numbers 581, 582, 583, 584, 596, 597, 598, and 599. Generally residents of Puerto Rico do not file a U.S. Individual Income Tax Return.

9.  Because a tax refund may not be issued if it is based on an SSN already contained on a previously filed income tax return, those filing fraudulent income tax returns using Puerto Rican SSNs are more likely to get an income tax refund for the same tax year. The first income tax return to come into the Internal Revenue Services ("IRS") using a SSN is generally accepted; if a second tax return is received after a tax refund has been issued on the first tax return using the same SSN, a tax refund may not be issued on the second filed income tax return.

10. Investigators have learned that Puerto Rican SSNs are often purchased or stolen from schools, hospitals and low-income individuals in Puerto Rico and then sold in the continental United States. The names and SSNs from the purchased or stolen identities are often used to fabricate Forms W-2 that reflect fictitious wage and withholding amounts from legitimate businesses. The fraudulent Forms W-2 are formulated to generate substantial tax refunds and are then used to prepare fraudulent income tax returns claiming those refunds.

11. Investigators have also learned that often the perpetrators of OMM schemes use addresses on the income tax returns they file that they either have access to, or can control, in order to obtain possession of the United States Treasury Checks that are issued to reflect the claimed income tax refunds.

12. Once the perpetrator of an OMM scheme obtains a United States Treasury Refund Check ("Treasury Check"), which is issued in the name of the "person" whose name appears on the electronically filed income tax return, the perpetrator must find a way to cash the check. Many different methodologies have been observed by federal law enforcement as being used by OMM schemers to cash these Treasury Checks. A few of these methods include: forging payees signatures; depositing checks into "controlled" bank accounts; and selling checks to a third party.

### Probable Cause to Believe that Crimes are Being Committed

13. On or about March 27, 2012, HSI Boston, HIDTA Financial Group received information from a confidential informant ("CI") that individuals located in New York were in possession of over one million dollars in U.S. Treasury Checks, which were generated using an OMM scheme. The CI further stated that they were looking for a way to negotiate these Treasury Checks for cash and would pay a fee of 35% of the face value of the check to do so. The CI subsequently arranged to meet with an associate of the New York individuals to assist in cashing Treasury Checks.

14. On or about April 24, 2012, the CI met with a male (later identified through this investigation as ODALYS CASTILLO), who the CI believed to represent persons affiliated with the individuals in New York. The CI and CASTILLO met in South Attleboro, Massachusetts. The CI was provided with $5,000 in USSS Payment of Evidence ("POE") funds, as partial payment for the U.S. Treasury Checks the CI was expected to receive from CASTILLO. During the meeting CASTILLO provided the CI with three (3) U.S. Treasury Checks, numbered 3158 03819786, 4500 55412338 and 3158 02029149, totaling $20,023.06. In exchange, the CI gave CASTILLO the $5,000 of cash provided to him/her by the USSS. A video recording clearly depicts this exchange. The

6

meeting between the CI and CASTILLO was consensually recorded in audio and video.

15. Subsequently, it was determined that these three (3) Treasury Checks were issued by the United States government as income tax refunds and were fraudulently obtained. In this regard, (1) the payees named on the checks are residents of Puerto Rico while the addresses on the checks are located in New York; (2) the Social Security Numbers associated with the checks belong to residents of Puerto Rico; and (3) the addresses on the checks do not have any association with the payees named on the checks. Furthermore, based upon the investigation to date, the three (3) US Treasury tax refund checks given to the CI on April 24, 2012, were issued as a result of the filing of false federal income tax returns using the social security numbers of other individuals. For example, according to the employer listed on underlying tax return of refund check 3158 0209129, the payee never worked for the employer listed on Form W-2 Wage and Tax Statement which was attached to the tax return. That is, the applicable W-2 was falsified and used to support a fraudulent income tax return that resulted in a tax refund check being issued and sent to an address in New York. According to internal government database searches, the listed payee is a resident of Puerto Rico and not New York. Similar results were

obtained for the other Treasury Checks given to the CI by CASTILLO.

16. On or about May 1, 2012, the CI met again with CASTILLO in South Attleboro, Massachusetts. The CI was provided with another $5,000 in USSS POE funds for further payment of $20,023.06 of Treasury Checks that CASTILLO gave to the CI on April 24, 2012. During this meeting CASTILLO gave the CI four (4) more U.S. Treasury Checks, numbered 3158 27220903, 3158 27220915, 4500 55636241 and 3158 02815561, totaling $24,849.29. A video recording clearly depicts this exchange. The CI stated that during the exchange CASTILLO claimed that the "people he works with" purchased a "Turbo Tax computer program" for $20,000 to $30,000 that permits them to file as many federal income tax returns that they would like. The meeting between the CI and CASTILLO was consensually recorded in audio and video.

17. Subsequently, it was determined that these four (4) Treasury Checks were issued by the United States government and were fraudulently obtained. Again, (1) the payees named on the checks are residents of Puerto Rico while the addresses on the checks are located in New York; (2) the Social Security Numbers on the checks belong to residents of Puerto Rico; and (3) the addresses on the checks do not have any association with the payees named on the checks. Furthermore, based upon our investigation to date, the four (4) US Treasury tax refund

checks given to the CI on May 1, 2012, were obtained through the filing of false federal income tax returns using social security numbers of other individuals.

18. On or about May 2, 2012, I, or those under my direction, conducted a consensually monitored and recorded telephone conversation between the CI and CASTILLO. The CI contacted CASTILLO at telephone number (646)410-5956. During this phone call CASTILLO stated that he would provide the CI with a bank account to which funds should be deposited in payment for Treasury Checks delivered on April 24, 2012. CASTILLO followed this conversation with a text message to the CI which included a description of bank account at TD Bank in the name of Chalys Garcia. CASTILLO instructed the CI to deposit the remaining balance into the aforementioned account for the three (3) Treasury Checks seized April 24, 2012. The telephone conversation between the CI and CASTILLO was consensually recorded.

19. On or about May 3, 2012, CASTILLO provided the CI, via a text message from telephone number (646)410-5956, another bank account number which CASTILLO identified as being in the name of Odalys Castillo. CASTILLO instructed the CI to instead deposit the remaining amount owed into the aforementioned account for the three (3) Treasury Checks seized April 24, 2012.

20. On or about May 4, 2012, an additional $2,000 of HSI POE funds were deposited by HSI into the Castillo bank account at TD Bank for the final payment on the three (3) Treasury Checks seized on April 24, 2012.

21. On or about May 7, 2012, I, or those under my direction, conducted a consensually monitored and recorded telephone conversation between the CI and CASTILLO.  The CI contacted CASTILLO at telephone number (646)410-5956.  The CI told CASTILLO that he/she could not meet, but that he/she would deposit the remaining payments on the four (4) Treasury Checks seized on May 1, 2012 into the account provided by CASTILLO as instructed.  The telephone conversation between the CI and CASTILLO was consensually recorded.

22. On or about May 8, 2012, CASTILLO provided the CI with a third bank account number at Bank of America in the name of Marino Martinez.  CASTILLO instructed the CI to deposit payment for the four (4) Treasury Checks seized on May 1, 2012, into this account.

23. On or about May 8, 2012, $5,000 of HSI POE funds were deposited by HSI into the Martinez bank account at Bank of America for partial payment on the four (4) Treasury Checks seized on May 1, 2012.

24. On or about May 8, 2012, $4,000 of HSI POE funds were deposited by HSI into the Castillo bank account at TD Bank for

partial payment on the four (4) Treasury Checks seized on May 1, 2012.

25. On or about May 8, 2012, I, or those under my direction, conducted a consensually monitored and recorded telephone conversation between the CI and CASTILLO. The CI contacted CASTILLO at telephone number (646)410-5956. The CI told CASTILLO that he/she would provide the remaining payment of $5,000 owed for the four (4) Treasury Checks seized on May 1, 2012, soon. The CI further stated he/she was interested in obtaining an additional $500,000 in Treasury Checks. The telephone conversation between the CI and CASTILLO was consensually recorded.

26. On or about May 10, 2012, CASTILLO provided the CI with a fourth bank account number at Bank of America in the name of Ana Cruz. CASTILLO instructed the CI to deposit the final payment for the four (4) Treasury Checks seized on May 1, 2012, into this account.

27. On or about May 11, 2012, $5,000 of USSS POE funds were deposited by the USSS into the Cruz bank account at Bank of America for final payment on the four (4) Treasury Checks seized on May 1, 2012.

28. On or about May 12, 2012, CASTILLO contacted the CI on telephone number (646) 410-5956. During this telephone call, CASTILLO stated that an outstanding balance of $800.00 was still

11

owed for the four (4) U.S. Treasury Checks seized on May 1, 2012. CASTILLO instructed the CI to deposit $800.00 into TD Bank in the name of Odalys Castillo.

29. On or about May 18, 2012, $800.00 of USSS POE funds were deposited by the USSS into the Castillo bank account at TD Bank in payment on the final balance owed for the four (4) U.S. Treasury Checks seized on May 1, 2012.

30. On or about May 25, 2012, the CI met again with CASTILLO in South Attleboro, Massachusetts. For this meeting the CI was provided with another $5,000 of HSI POE funds for a down payment for a future delivery of $150,000 worth of Treasury Checks. During this meeting CASTILLO gave the CI four (4) more U.S. Treasury Checks, numbered 3158 02282517, 3158 02282516, 3158 02282486 and 3158 02815561, totaling $33,027.00. A video recording clearly depicts this exchange. The meeting between the CI and CASTILLO was consensually recorded in audio and video.

31. On or about May 30, 2012, $3,000.00 of USSS POE funds were deposited by the USSS into the Castillo bank account at TD Bank for partial payment for the four (4) U.S. Treasury Checks seized on May 25, 2012. The cumulative amount of POE funds provided to CASTILLO to date is $37,800.00. The cumulative value of Treasury Checks seized to date is $77,899.35.

32. Through a series of recorded telephone calls, CASTILLO and the CI arranged for another transaction. CASTILLO agreed to provide the CI with approximately $160,000 in U.S. Treasury Checks in exchange for a payment of $80,000. The two agreed to meet on June 7, 2012 in South Attleboro, Massachusetts.

33. On June 7, 2012, agents established surveillance at the agreed-upon meeting location. At approximately 12:35 p.m., CASTILLO arrived at the location in a vehicle along with another male. CASTILLO was identified and arrested.

34. Based on my training and experience, and the evidence accumulated in this investigation, it is my belief that there is probable cause to conclude that ODALYS CASTILLO knowingly attempted to convert to his personal use, or the personal use of another, United States government property, to wit the Treasury Checks described in paragraphs 15 and 17, which he knew were fraudulently obtained, in violation of Title 18 U.S.C. § 641; and conducted financial transactions involving funds represented to be the proceeds of a specified unlawful activity for the purpose of concealing or disguising the nature, location, source, ownership or control of said proceeds, in violation of Title 18 U.S.C. § 1956(a)(3).

                                                                                          _____
                                                                                          John S. Soares
                                                                                          Special Agent
                                                                                          Department of Homeland Security
                                                                                          Homeland Security Investigations

Sworn to before me this 7th day of June 2012

_____
Hon. JUDITH G. DEIN
United States Magistrate Judge
District of Massachusetts